## 33523. WESTBROOK v. THE STATE.

NICHOLS, Chief Justice.

Appellant Johnny Mack Westbrook was indicted in Jones County for two counts of murder and two counts of kidnapping with bodily injury. He was convicted on all counts and was sentenced to death for each murder and to life imprisonment for each kidnapping.

The case is before this court on appeal and for mandatory review of the death sentences.

The state presented evidence from which the jury was authorized to find the following facts:

On September 23, 1977, appellant and one Eddie William Finney went to the home of Mrs. Thelma Kalish in Macon, Georgia, to cut her lawn. Shortly after appellant and Finney began cutting the grass, they decided that they did not desire to work and conceived the idea of robbing Mrs. Kalish. They lured Mrs. Kalish from her home on a pretext concerning the lawnmower, grabbed her, stuck a pistol in her side, and took her back into her house where they tied her up and both of them raped her.

Mrs. Kalish did not have any cash at home, so they forced her at gunpoint to drive to her bank, to withdraw $600 in cash, and to give it to them. When they arrived back at her house, Mrs. Kalish jumped out of the car,

screamed, and began running toward her neighbor, Mrs. Ann Kaplan, who was standing nearby. Appellant caught Mrs. Kalish and hit her over the head with her pistol. Finney grabbed Mrs. Kaplan and hit her with his fists and a pistol.

Appellant and Finney put the two women into the back seat of Mrs. Kalish's car and drove to a remote, wooded area in Jones County. There they took both women into the woods and tied and gagged them with pieces of Mrs. Kaplan's clothing. Appellant and Finney beat the two women to death with a two-by-four piece of lumber. Appellant killed Mrs. Kaplan and Finney killed Mrs. Kalish. An autopsy revealed that Mrs. Kaplan died of torn lacerations in the heart. Mrs. Kaplan also had bruises on her upper trunk, shoulders and chest. Mrs. Kalish had a three-inch laceration in her forehead, a fractured jaw, a fractured rib, a fractured arm, and several broken teeth. Both women died of blows inflicted by the appellant and Finney.

Appellant and Finney returned to Macon and abandoned Mrs. Kalish's car at the Fifth Street Bridge. Appellant went back to his apartment where he left Mrs. Kaplan's jewelry and his pistol.

That night appellant and Finney took a cab to Mrs. Kalish's house. However, when they saw several police cars, appellant directed the cab driver back to the place where the driver had picked them up. When appellant paid the bill, the cab driver noticed that appellant had a large roll of bills which were still in the band from the bank.

Appellant and Finney were identified through an informer and were placed under arrest. When he was arrested, appellant had $500 in $20 bills in his right sock. A search of appellant's apartment revealed a .32 pistol and loaded clip under the mattress and Mrs. Kaplan's charm bracelet on top of the vanity.

After Finney was arrested, he took law enforcement officers to Jones County where they found the bodies and Mrs. Kalish's purse. Inside the purse was a savings withdrawal slip for $600, dated September 23, 1977.

Finney's fingerprints were found on drinking glasses in Mrs. Kalish's bedroom. Both appellant and Finney

confessed to the crimes.

In order to lay the foundation for his legal arguments, the defendant presented his entire criminal and prison record during the sentencing phase of the trial.

1. In his first enumeration of error, appellant alleges that the trial court erred in refusing to appoint or provide an independent psychiatrist or other qualified person to evaluate his ability and mental capacity. The purpose of the requested evaluation was to assist in his defense, which was based on the theory that as a result of his previous lengthy incarceration, the state virtually had destroyed his mental capacity and, as a result, he did not have the knowledge or understanding necessary to commit a crime with aggravating circumstances or to intelligently, voluntarily and knowingly waive his right to counsel while being interrogated by the police.

Appellant is a pauper and is represented by appointed counsel. Appellant urges that Bounds v. Smith, 430 U. S. 817 (97 SC 1491, 52 LE2d 73) (1977), requiring the states to furnish prisoners "meaningful access to the courts" by way of adequate legal assistance or adequate law libraries, should be extended to require the state to furnish him the services of a psychologist or psychiatrist since such professional services are "basic tools" to provide him an adequate defense. This court feels constrained not to extend the Bounds decision to the facts of this case.

Appellant's attorney admitted that appellant was capable of assisting in his defense and that appellant was neither mentally ill nor insane at the time he committed the offenses.

In the absence of any special plea of insanity by appellant, the request for a psychiatric examination lay within the discretion of the trial court, and the evidence presented at the trial did not raise an issue of insanity. *Holsey v. State,* 235 Ga. 270 (3) (219 SE2d 274) (1975); *Lewis v. State,* 239 Ga. 732 (238 SE2d 892) (1977). Denial of the motion for the appointment of an expert was a matter of trial court discretion and will not be reversed on appeal in the absence of an abuse of that discretion. *Welch v. State,* 237 Ga. 665, 672 (229 SE2d 390) (1976); *Patterson v. State,* 239 Ga. 409, 412 (238 SE2d 2) (1977).

The trial court did not abuse its discretion by denying appellant's request for the appointment of an expert psychiatric witness. The first enumeration of error is without merit.

2. Appellant's second and third enumerations of error contend that the trial court erred, respectively, in overruling his plea in bar and in overruling his motion to suppress. Appellant contends in support of his plea and motion that the state has forfeited its right to seek the death penalty because his lengthy previous sentences and periods of confinement virtually destroyed his mental capacity and caused him to become the sort of person he is now. These enumerations of error are without merit.

3. In the fourth enumeration of error, appellant contends that the court erred in refusing to disqualify the juror Robert A. Morgan for cause, thereby requiring him to use one of his peremptory strikes.

During voir dire, the court granted seven motions by the appellant to strike jurors for cause on the ground that the jurors were not impartial. A motion to strike an eighth juror, Robert Morgan, was denied.

Morgan initially stated he was leaning toward the death penalty. Upon further interrogation, he testified that he would consider all of the evidence and determine whether to impose the death penalty or life imprisonment based upon the evidence presented.

"The conduct of the voir dire is within the discretion of the trial court, and the court's rulings are proper absent some manifest abuse of discretion. *Welch v. State,* 237 Ga. 665 (5) (229 SE2d 390) (1976); *Gatlin v. State,* 236 Ga. 707 (2) (225 SE2d 224) (1976). Whether to strike a juror for cause lies within the discretion of the court. *Welch,* supra." *Patterson v. State,* 239 Ga. 409, 411 (1) (238 SE2d 2) (1977).

In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. *Sullens v. State,* 239 Ga. 766 (1) (238 SE2d 864) (1977). It was not established that Morgan had such a fixed opinion.

This enumeration of error is without merit.

4. In his fifth and sixth enumerations of error, appellant contends that the trial court erred by commenting on the weight and credibility of the opinion of the appellant's expert witness, Dr. Steve Davis, a Mercer University professor of psychology with a doctorate degree in psychology who had been offered by the defense as a psychologist. The court said to the jury during examination of Dr. Davis, and later charged the jury, that Dr. Davis has a Ph.D. in psychology and that is as far as Dr. Davis had qualified himself as an expert. Contrary to appellant's assertions, the court's reference to Dr. Davis' qualifications as an expert was not an expression or intimation of the court's opinion as to what had or had not been proven. Code Ann. § 81-1104. Rather, the court repeatedly charged that the weight and credit to be given to Dr. Davis' testimony was a question for the jury to determine. The trial court's actions and statements in this regard were proper. *McCoy v. State,* 237 Ga. 118, 119 (227 SE2d 18) (1976).

These enumerations of error are without merit.

5. In the seventh enumeration of error, appellant alleged "The Court erred in submitting the issue of the death penalty to the jury on the two murder counts." Appellant asserts in essence that his long incarceration by the state "had the effect of depriving him of the opportunity to be socially adjusted to such an extent that he could truly understand and be aware of the consequences of an act of murder in such a manner as the one that was committed here." This assertion is similar to the contentions raised in the first three enumerations of error. It is without merit.

6. Appellant's assertion in the eighth enumeration of error that the court erred in not permitting the jury to set the penalty with respect to the kidnapping counts is not meritorious inasmuch as the jury had already convicted the appellant of both counts of kidnapping with bodily injury and only one of two sentences could be imposed, either life or death. The appellant cannot complain that the trial court sentenced him to life, the lesser of these punishments, without submitting the issue to the jury where, as here, death sentences could have been imposed for these offenses because the victims died.

See *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977).

7. In the ninth enumeration of error, the appellant alleged "The Court erred in his charge with respect to the kidnapping counts when he gave to the jury that portion of the statute which referred to a possible punishment of less than life imprisonment."

The trial court explicitly charged the jury that "if the person kidnapped shall have received bodily injury, the person convicted shall be punished by life imprisonment or by death." Inasmuch as the jury already had convicted the appellant of kidnapping with bodily injury on both counts, the fact that the trial court read Code § 26-1311 in its entirety, including the punishment for simple kidnapping, could not have misled the jury or harmed the appellant.

This enumeration of error is without merit.

8. In the tenth enumeration of error, appellant contends: "The Court erred in failing in his charge on the punishment portion of the trial to make it clear to the jury that the jury could impose a life sentence despite the existence of aggravating circumstances."

As to both of the counts for murder, the trial court charged the jury that one of their possible verdicts was: "We, the jury, find the defendant guilty . . . the following statutory aggravating circumstance or circumstances, having been found by the jury, to-wit . . . and we recommend mercy or that the defendant's punishment be life imprisonment."

This option is also contained on the work sheets furnished to the jury on both murder counts.

This enumeration of error is without merit. *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977).

*Sentence Review*

The sentences have been reviewed by this court as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c)(1-3)), as has been done in each case involving a death penalty under this statute. Upon considering the statutory aggravating circumstances found by the jury and the evidence concerning the crimes and the defendant, this court concludes that the sentences of

death imposed on Johnny Mack Westbrook were not imposed under the influence of passion, prejudice or any other arbitrary factor.

The jury found statutory aggravating circumstances as to the murder of Mrs. Kaplan in that the offense of murder was outrageously or wantonly vile, horrible or inhumane in that it involved torture, depravity of mind or an aggravated battery to the victim (Code Ann. § 27-2534.1 (b) (7)) and that the murder was committed in the commission of another capital felony, to wit: murder. Code Ann. § 27-2534.1 (b) (2). As to the murder of Mrs. Kalish, the jury found that the murder was outrageously or wantonly vile, horrible or inhumane in that it involved torture, depravity of mind or an aggravated battery to the victim. Code Ann. § 27-2534.1 (b) (7).

The jury's findings of statutory aggravating circumstances are supported by the evidence and the verdict is factually substantiated.

In reviewing the death penalty in this case, this court has considered the cases appealed since January 1, 1970, in which a death or life sentence was imposed. The similar cases listed in the appendix support affirmance of the death penalty.

Prior to these offenses, appellant has compiled a criminal record that includes convictions for eleven burglaries, one attempted burglary, one simple larceny, one concealed weapon offense, one possession of an unlicensed pistol offense and two escapes. His prison record, entered by the defense, indicates 34 prison offenses while in confinement.

Johnny Mack Westbrook's death sentences for these murders are not excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 8, 1978 — DECIDED SEPTEMBER 5, 1978 — REHEARING DENIED SEPTEMBER 26, 1978.

*Denmark Groover, Jr., Frank D. Farrar, Jr.,* for appellant.

*Joe Briley, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Gaddis v. State,* 239 Ga. 238 (236 SE2d 594) (1977); *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977).