**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2017**

# In the Court of Appeals of Georgia

A16A1863. SACHTJEN v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for less-safe driving under the influence (DUI) and reckless driving, Brian Sachtjen argues that the trial court erred when it refused to charge the jury that the absence of some audio portions of a video recording of the incident entitled him to a presumption that the missing parts of the recording would have been favorable to the defense. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." _Reese v. State_, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Thus viewed in favor of the verdict, the record shows that on February 11, 2012, a City of Atlanta police officer traveling north on West Peachtree Street towards the intersection with 14th Street saw a Jaguar automobile traveling east on 14th Street begin a right turn (southbound) onto West Peachtree Street. The officer's attention was attracted because the Jaguar was now going the wrong way on West Peachtree Street, which is a northbound one-way street on both sides of its intersection with 14th Street, and because the Jaguar was headed towards a car traveling northbound on West Peachtree. The officer then saw the Jaguar correct itself, turn left back onto 14th Street heading east, and nearly hit a concrete median. After the officer saw the Jaguar failing to maintain its lane, he activated his blue lights, and the Jaguar pulled into the exit-only lane of a parking lot, blocking a car that was stopped at a cashier's booth.

The officer approached the car, which Sachjten had already exited without being asked. When the officer noticed vomit on Sachtjen's shirt and jacket and asked if Sachtjen was "okay," Sachtjen replied that he was. When the officer asked if

2

Sachtjen knew why he had been stopped, Sachtjen shook his head and then said that he did not know. As the officer explained why he had stopped Sachtjen, who said that he had drunk "not much," the officer noticed that Sachtjen's eyes were watery and glazed, that his speech was garbled, that he was unsteady on his feet, and that he had a strong odor of alcohol on his breath. After speaking to the parking lot attendant about getting the lot's patrons out of the lot by another exit, the officer administered field sobriety tests, which showed six out of six clues on the horizontal gaze-nystagmus (HGN) test, six of eight clues on the walk-and-turn test, and three of four clues on the one-leg-stand test. The officer then placed Sachtjen under arrest for less-safe DUI, placed him in the patrol car, and read him the implied consent warning, including a request for a state-administered breath test. Sachtjen agreed to a breath test, which showed blood-alcohol levels of 0.198 or more.

Sachtjen was charged with per-se and less-safe DUI, reckless driving, failure to maintain lane, and driving the wrong way on a one-way street. After a hearing on Sachtjen's motion to suppress, the trial court suppressed the breath test result on the ground that Sachtjen's request for an independent blood test had not been communicated to the arresting officer. As a result, the per-se charge against Sachtjen was dismissed.

3

A camera in the officer's patrol car recorded Sachtjen's arrest. This video recording included some audio portions recorded by the officer's body microphone, but this audio failed, for reasons the officer did not know, when he and Sachtjen returned to the patrol car. According to the officer's testimony, he answered a phone call from Sachtjen's wife (with Sachtjen's permission) on returning to his patrol car. Before trial, Sachtjen requested that the jury be charged as follows:

> If you find from the evidence that a videotape recording was made of the traffic stop and roadside investigation in this case, and that the police failed to preserve all or a part of the tape recording, I instruct you to presume that the tape, had you been able to view it, would have been favorable to the defendant.

The trial court denied this request, but authorized Sachtjen to argue that the jury was entitled to consider the partial absence of audio from the video recording of his arrest. The video was played for the jury, which found Sachtjen not guilty of failing to maintain lane and wrong-way driving but guilty of less-safe DUI and reckless driving. Sachtjen was convicted, and his motion for new trial was denied. This appeal followed.

1. Although Sachtjen has not asserted that the evidence was insufficient, we have reviewed the record, and conclude that the evidence outlined above was

4

sufficient to sustain his conviction for less-safe DUI and reckless driving. See OCGA §§ 40-6-391 (a) (1) (defining less-safe DUI as "driv[ing] or be[ing] in actual physical control of any moving vehicle while [u]nder the influence of alcohol to the extent that it is less safe for the person to drive"), 40-6-390 (a) (defining reckless driving as "driving any vehicle in reckless disregard for the safety of persons or property"); *Putman v. State*, 257 Ga. App. 902, 904 (1) (b) (572 SE2d 412) (2002) (whether the State has proven criminal negligence amounting to reckless driving is "a jury question") (footnote omitted).

2. In his only assertion of error, Sachtjen argues that the trial court erred when it refused to give the instruction transcribed above. Specifically, Sachtjen asserts that "when [a police] officer fails to use [ ] equipment he was given through tax payer [sic] money or fails to preserve any recording made, that should raise a presumption," akin to the spoliation presumption sometimes applicable in civil cases,[1] that the information on the audio recording would have been favorable to the defense.

---

[1] See, e.g., *Phillips v. Harmon*, 297 Ga. 386, 396 (II) (774 SE2d 596) (2015) ("the duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending but when it is reasonably foreseeable to that party") (citations omitted).

We review a trial court's refusal to give a requested jury charge only for an abuse of discretion. *Turner v. State*, 314 Ga. App. 263-264 (1) (724 SE2d 6) (2012). "A refusal to give a requested jury charge is not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge." Id. at 264 (1) (punctuation and footnote omitted).

As a preliminary matter, we note that Sachtjen does not cite any arguably relevant provisions of the procedures governing discovery in criminal proceedings, OCGA § 17-16-1 et seq., concerning any failure to produce existing written or recorded statements for use by the defense. See, e.g., OCGA § 17-16-4 (a) (1) (providing for disclosure of "any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the state or prosecution"). Here, the State produced the evidence it had, including the videotape of Sachtjen's arrest, and there is no evidence that the State failed to preserve or produce any evidence that previously existed in the case. Because this record does not support the giving of any charge as to any failure to preserve evidence that never came into existence, the trial court did not abuse its discretion in failing to give Sachtjen's requested charge. *Revere v. State*, 277 Ga. App. 393, 395 (2) (626 SE2d

6

585) (2006) (trial court did not err in refusing to give requested charges when these charges were "not adequately adjusted to the evidence"); *Lustre-Diaz v. Etheridge*, 309 Ga. App. 104, 107 (709 SE2d 309) (2011) (when some evidence supported a trial court's finding that photographs allegedly spoliated were never in defendants' possession, the court's denial of a remedy for the alleged spoliation was not an abuse of discretion).

As Sachtjen concedes, moreover, we have not seen any Georgia law suggesting that a spoliation presumption could apply to criminal proceedings, and Sachtjen has failed to explain how any other legal authority dictates or suggests the result for which he argues.[2] In the absence of any Georgia law to the effect that a trial court might be required to charge a jury deliberating on criminal charges as to any spoliation presumption, Sachtjen has not shown that the trial court abused its discretion when it denied his request so to charge this jury. *Pacheco v. Regal Cinemas*, 311 Ga. App. 224, 225-226 (1) (b) (715 SE2d 728) (2011) (in the absence of legal authority supporting defendant's theory of a requested spoliation charge, a trial court did not abuse its discretion in refusing the request).

*Judgment affirmed. Ellington, P. J., and Mercier, J., concur.*

---

[2] Further, one of the two cases Sachtjen cites on civil spoliation has been explicitly overruled by our Supreme Court. *Clayton County v. Austin-Powell*, 321 Ga. App. 12 (740 SE2d 831) (2013), overruled by *Phillips*, supra, 297 Ga. at 398, n. 10.

7